A. A. Jackson & Bro. v. M. W. Butler, Assignee.

Decided May 13, 1899.

**Contract—Agent Allowing Rebate Without Authority.**

A purchaser of a carload of produce from a broker who, without authority from the seller, agrees to allow a specified rebate, is not bound to receive the shipment after the refusal of the seller to allow such rebate.

Appeal from the County Court of Dallas. Tried below before Hon. Kenneth Foree.

*Alexander, Clark & Thompson* and *Perkins, Gilbert & Hall,* for appellants.

*Thompson & Thompson,* for appellee.

RAINEY, Associate Justice.—This suit was brought by M. W. Butler, as assignee of Waldram, Dean & Co., of Ogden, Utah Territory, against A. A. Jackson & Bro., to recover the value of a carload of onions alleged to have been sold and delivered to said Jackson & Bro. at their special instance and request. The onions were placed on board the cars at Ogden and transported to Dallas, Texas. Jackson & Bro. refused to receive them. The onions remained in possession of the railroad for some time, deteriorated in value, and were finally sold by the railroad company for charges at a reduced price. Special issues were submitted to the jury by the court, and upon their findings judgment was rendered for plaintiff, from which this appeal is taken.

The testimony shows that on February 23, 1892, and for some time prior thereto, J. C. Howerton & Co. were doing a brokerage business in the city of Dallas, where Jackson & Bro. were doing a general produce business. On the date last mentioned J. C. Howerton made a contract with Jackson & Bro. to sell them, for Waldram, Dean & Co., a carload

of onions for the price of $1.20 per hundred pounds, conditioned that a rebate of $40 would be allowed to Jackson & Bro., claimed on account of Waldram, Dean & Co.'s refusal to ship a car of onions ordered in December prior thereto. Howerton & Co. instructed Waldram, Dean & Co. to ship Jackson & Bro. the carload of onions at $1.20 per hundred pounds, but failed to notify them as to the condition that a rebate of $40 was to be allowed. In pursuance of said instructions, Waldram, Dean & Co. delivered the onions, free on board the cars at Ogden, to be transported to Dallas, taking the bill of lading in their own name, which they indorsed to Jackson & Bro., with draft attached for the purchase price of the onions. When the bill of lading and draft were presented to Jackson & Bro. through the bank at Dallas, they refused to pay the same because the draft was for the full value of the onions, and the rebate of $40 contracted for was not allowed. Jackson & Bro. immediately sent Waldram, Dean & Co. the following telegram: "What about the rebate? Will reject if you do not allow it. Answer." No answer was made to this telegram, though received by Waldram, Dean & Co. The car of onions ordered in December, above mentioned, was ordered by De Stefano, but Jackson had a half interest therein, and De Stefano had a half interest in the car ordered by Jackson & Bro. These facts were known to Howerton & Co., but were not known by Waldram, Dean & Co. The car of onions ordered for De Stefano in December were not shipped for fear of damage on account of frosts, and De Stefano would not take the risks when informed that the onions were to be shipped under that provision. Lonzo Waldram, Jr., testified that the firm of Waldram, Dean & Co. had no agent in Dallas, Texas; "the nature of the business we had with J. C. Howerton & Co., and the character of our transaction with said firm, were with letters we sent to J. H. Howerton & Co. regarding potatoes, onions, etc., naming prices, terms, and conditions of same at Ogden, Utah. Whenever they saw an opportunity to make a sale they telegraphed us for prices, which were sent them by wire. When orders were procured they at once submitted them to us by wire. We at once notified them by wire whether the order was accepted or rejected. We also notified the buyer of the acceptance of his order. Howerton acted on these instructions and received a stipulated sum for brokerage on each car sold and accepted. Howerton & Co. had authority to submit the prices on potatoes, onions, etc., furnished them by Waldram, Dean & Co. to intending buyers, and when orders were tendered them to submit said orders to Waldram, Dean & Co. for approval or rejection by letter or wire. They positively had no authority from Waldram, Dean & Co. to make any transactions except thus specifically stated to them by letter or wire in each particular case." On cross-examination he testified: "I only know Howerton & Co. were brokers from their letterheads and from their letters and telegrams to our firm. I have no personal knowledge of the business they were in except through their correspondence with our firm. As I remember it, Howerton & Co. were our only brokers in Dallas, Texas, during the winter of 1891 and 1892. No one had authority to place orders for Waldram,

Dean & Co., but simply to solicit orders under certain specified conditions."

The jury found that J. C. Howerton was the broker of Waldram, Dean & Co. at Dallas, in December, 1891, and in February, 1892; that they could confirm or reject any sale made by Howerton & Co., and that they had no authority to allow for Waldram, Dean & Co. any rebate on the car shipped to Jackson & Bro. They further found that the contract between Howerton and Jackson & Bro. was conditioned that a rebate of $40 was to be allowed Jackson & Bro. on the price of said car.

A. A. Jackson testified that he would not have ordered the onions only upon the condition that the rebate was to be allowed. It is also shown that Jackson & Bro. knew that Howerton & Co. were brokers and the capacity in which they were acting. The question arises, were Jackson & Bro. bound to receive the car of onions after the refusal of Waldram, Dean & Co. to allow the rebate upon which the contract of sale was conditioned?

The authorities denominate a broker as a "middleman" or "go-between" to perfect an understanding between the contracting parties; and he is not necessarily the agent of either party. When employed by a party to do a particular thing he is primarily that party's agent, and ordinarily the party with whom he deals must take notice of the authority given him by his principal. 4 Am. and Eng. Enc. of Law, 2 ed., 966; 1 Lawson's Rights and Rem., sec. 225; Mech. on Agency, sec. 939; Story on Agency, secs. 28-31.

Howerton had no authority to contract with Jackson & Bro. for a rebate on the car of onions. His authority extended no farther than to sell at the prices given him by Waldram, Dean & Co., subject to their approval, and they were not bound to comply with the contract as made. Neither was Jackson & Bro. bound to receive and pay for the car of onions unless the rebate of $40 was allowed as stipulated by the contract. Howerton's failure to notify Waldram, Dean & Co., when ordering the onions, of the condition made by Jackson & Bro. as to the rebate, did not change Jackson & Bro.'s liability on the contract. He was not Jackson & Bro.'s agent, and his omission can not be laid to their charge. The transaction was unfortunate for Waldram, Dean & Co., but taking the findings of the jury to be true, Jackson & Co. were not to blame and ought not to be made to suffer. They notified Waldram, Dean & Co. as soon as they were informed of the condition of the matter, and the damages might have been materially lessened, if not altogether prevented, had Waldram, Dean & Co. acted upon the receipt of Jackson & Bro.'s telegram in relation to the rebate. Had the understanding been as Howerton advised them, Waldram, Dean & Co. could have refrained from doing anything as they did, and held Jackson & Bro. liable for their claim. Waples v. Overton, 77 Texas, 7.

But as the condition of the contract was not complied with, the duty was to protect themselves from loss if possible. The title to the goods still remained in them (Refining Co. v. Refining Co., 47 Southwestern

Reporter, 602), and they could probably have disposed of them without loss. Anyhow, Jackson & Bro. were not liable, as the terms of purchase submitted by them were never complied with. "A sale is a mutual agreement constituted by an offer to sell on terms by one side, and an acceptance by the other, and the acceptance must be responsive to the very terms stated in the offer." There was no contract of sale in this case, as there was no mutual understanding between the parties as to the terms thereof. Joseph v. Cannon, 11 Texas Civ. App., 295; Refining Co. v. Lee, 41 S. W. Rep., 362; Summers v. Mills, 21 Texas, 78; Carr v. Duvall, 14 Pet., 77.

It is insisted, however, by appellees that Howerton had no authority to contract for a rebate, and further, that Jackson & Bro. were not entitled to a rebate, as there were no just grounds therefor. This is immaterial. Jackson & Bro. in making the contract had a right to impose such conditions as they saw proper, whether just or not, and had the right to insist on a compliance therewith, and unless complied with they incurred no responsibility.

The judgment is reversed and cause remanded.

*Reversed and remanded.*